# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **THE REZULT GROUP, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:22-cv-00567** |
| ) | **Judge Aleta A. Trauger** |
| **HARRISON TURKHEIMER and THE** ) | |
| **INTERSECT GROUP, LLC,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Plaintiff The Rezult Group, Inc. ("Rezult") has filed suit against Harris Turkheimer and The Intersect Group, LLC ("TIG"), asserting claims against Turkheimer for breach of the non-compete and confidentiality provisions of an Employment Agreement with Rezult; violation of the federal Defend Trade Secrets Act, the Tennessee Uniform Trade Secrets Act, and the Florida Trade Secrets Act against both defendants; and tortious interference with contract/inducement of breach of contract against TIG. (Doc. No. 1.) The plaintiff seeks damages as well as declaratory and injunctive relief.

Now before the court are the Motions for Partial Dismissal filed by Turkheimer (Doc. No. 38) and TIG (Doc. No. 40), seeking the dismissal of the trade secret and inducement of breach of contract claims. Each motion is supported by a Memorandum of Law. (Doc. Nos. 39, 41.) Rezult has filed a consolidated Response in opposition to both motions (Doc. No. 43), and TIG filed a Reply (Doc. No. 45).

For the reasons set forth herein, Turkheimer's motion will be denied, and TIG's motion will be granted in part and denied in part.

## I.     FACTS

Rezult is a Tennessee corporation whose principal place of business is in Brentwood, Tennessee. Turkheimer is a resident of Delray Beach, Florida, and TIG is a limited liability company registered to do business in Tennessee and whose two members are, respectively, residents of Oakton, Virginia and Atlanta, Georgia. The plaintiff asserts personal jurisdiction over Turkheimer on the basis of the signed Employment Agreement in which he consented to the jurisdiction of Tennessee courts, state or federal, over any dispute arising between Turkheimer and Rezult. (Doc. No. 1-1, Employment Agreement ¶ 9.) The parties do not dispute jurisdiction or venue in this court.

As relevant to the trade secret and inducement of breach of contract claims that are the subject of the defendants' Motions for Partial Dismissal, Rezult alleges that it is a "nationwide provider of employment services" that "provides staffing solutions for companies in the highly-competitive fields of technology, accounting and finance, and healthcare IT." (Doc. No. 1, Compl. ¶¶ 9–10.)

Rezult hired Turkheimer as a Business Development Manager in May 2020; Turkheimer's title quickly changed to Business Development Partner. (*Id.* ¶ 12.) Upon his hire, Turkheimer signed an Employment Agreement that includes a noncompetition provision, pursuant to which, among other things, Turkheimer agreed that, for a period of one year following the termination of his employment, with or without cause and regardless of whether he voluntarily resigned or was involuntarily terminated by Rezult, he would not be employed by

> any business that is engaging in . . . any aspect of REZULT's Business in which EMPLOYEE performed work during the one (1) year preceding [his] termination of employment, within 150 miles of EMPLOYEE's employment, or as much geographic territory as a court of competent jurisdiction deems reasonable.

(Doc. No 1-1, Employment Agreement ¶ 3(1).)

In addition, the Employment Agreement contains a "Covenant Not to Divulge Confidential Information." (*Id.* ¶ 5.) This provision defines "Confidential Information" as

> information not generally known by REZULT's competitors or the general public concerning the REZULT Companies and that the REZULT Companies take measures to keep secret, including but not limited to: their financial affairs, sales and marketing strategy, acquisition plans, pricing and costs; their customers' names, addresses, telephone numbers, contact persons, staffing requirements, margin tolerances regarding pricing, and the names, addresses, telephone numbers, skill sets, availability and wage rates of its temporary or contract personnel; sales, recruiting, pricing and marketing techniques; sales and recruiting manuals; forms and processes for acquiring and recording information; financial controls; and management practices, procedures and processes.

(*Id.*)

While employed by Rezult, Turkheimer worked out of its Boca Raton, Florida office. In his Business Development role (as both "Manager" and "Partner"), Turkheimer developed relationships with Rezult clients in that region that needed accounting and finance ("A&F") and/or technology staffing. (*Id.* ¶ 20.) He acted as the "face of the company" for a number of "key accounts." (*Id.* ¶ 21.) In addition, Rezult provided him with "extensive training and access to substantial confidential and proprietary information," including Rezult's implementation plans; client database, which included past Rezult placements, contacts, and market metrics; its customers' staffing requirements and margin tolerances; and its sales, recruiting, pricing, and marketing techniques. (*Id.* ¶ 22.) Turkheimer was also provided "in-depth instruction regarding Rezult's comprehensive protocols for developing relationships and effectively filling client needs," and he worked closely with other Rezult managers to observe their techniques. (*Id.* ¶ 23.)

Turkheimer was very successful during his two years at Rezult and was being groomed for a leadership role in the company, which brought him additional opportunities, training and mentoring at Rezult. (*Id.* ¶¶ 24–26.) Before long, Turkheimer was second in command at Rezult's Boca Raton office. (*Id.* ¶ 26.) As a "future leader," he had even greater access to Rezult's

confidential information, including access to every client in its A&F and technology divisions. (*Id.* ¶ 27.)

Turkheimer gave notice of his resignation from Rezult on May 31, 2022. At the same time, he advised Rezult that he was joining TIG and starting its Boca Raton office. Turkheimer joined TIG sometime in June 2022.

According to Rezult, TIG focuses its staffing efforts on the same highly specialized, competitive industries in which Rezult operates—A&F and technology—and is its direct competitor in the Boca Raton, Nashville, Denver, and Atlanta markets. Rezult alleges that Turkheimer, in his new role with TIG, is responsible for finding clients that need staffing in A&F and technology—the same role he fulfilled at Rezult and in the same geographic region. (*Id.* ¶¶ 30–38 (citing TIG's website).)

Rezult asserts that its "business practice and strategies derive independent economic value from not being generally known" and that it has "gone to great lengths to maintain the secrecy of its confidential and proprietary information," including its "business practices and strategies." (*Id.* ¶ 43.) It alleges "upon information and belief" that Turkheimer has "used and disclosed relevant information regarding Rezult's business practices and clients to give [TIG] a competitive advantage and that this "disclosure" constitutes a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831–1838, the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. §§ 47-25-1701 through -1709, and the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. §§ 688.001–688.009. (*Id.* ¶¶ 44, 45.)

On the day he submitted his resignation, Turkheimer asked another Business Relationship Partner at Rezult to email him Rezult's "Top 10 Skill Sets" for IT recruiting. Not knowing he was leaving the company, she did so, sending it to his work email address. Turkheimer then forwarded

the document to his personal email address. Rezult asserts that Turkheimer did this in order to "obtain additional information regarding Rezult's business practices to take with him to [TIG]." (*Id.* ¶ 47.)

Rezult asserts that, when Turkheimer resigned, he left his work laptop in the Boca Raton office, but, before leaving, he "wiped [it] of all documents and information from his time with Rezult." (*Id.* ¶ 48.) Rezult asserts that, as a result, he deleted documents and information that Rezult owned as "works for hire" and that wiping his laptop was not "normal behavior" for an employee leaving the company. (*Id.*) According to Rezult, this action "create[s] an inference that Turkheimer took confidential and proprietary documents and information" with him when he left and that he was "covering his tracks." (*Id.* ¶ 49.) Rezult asserts that it has incurred damages arising from Turkheimer's breach of his confidentiality agreement and theft of its confidential and proprietary information. (*Id.* ¶ 50.)

## II.  PROCEDURAL HISTORY

Rezult filed its Verified Complaint, initiating this lawsuit, on July 29, 2022, shortly after Turkheimer's resignation. (Doc. No. 1.) As relevant here, counts C, D, and E are for (1) violation of the DTSA, against both Turkheimer and TIG; (2) violation of the TUTSA and FUTSA, against both defendants; and (3) tortious interference with contract, against TIG only.

In support of its various trade secret claims, Rezult, besides incorporating the other factual allegations in the Complaint, asserts that its confidential and proprietary information includes its "database of clients; customers' staffing requirements and margin tolerances; and sales, recruiting, pricing, and marketing techniques." (Doc. No. 1, Compl. ¶¶ 61, 66.) It claims that this information derives "independent economic value from not being generally known" and provided Rezult a competitive advantage that has allowed it to survive in a competitive industry. (*Id.* ¶¶ 61, 66.) It also asserts that it takes care to protect the secrecy of its confidential information and materials by

ensuring that access to it is password protected and limited "depending upon an employee's role within the organization." (*Id.* ¶¶ 62, 67.) As a result, it claims that this information qualifies as trade secret under the DTSA and that the defendants have violated the federal and state trade secret statutes by misappropriating its trade secrets and causing Rezult ongoing harm. (*Id.* ¶¶ 63, 64, 68, 69.)

In support of its inducement of breach of contract claim, Rezult alleges that it is "industry standard for employees like Turkheimer to have employment agreements containing restrictive covenants, including noncompetition, nonsolicitation, and confidentiality provisions." (*Id.* ¶ 71.) It further asserts that ordinary principles of due diligence would require a company recruiting laterally in the staffing industry to take affirmative steps to determine whether a prospective hire is subject to restrictive covenants that could be implicated and that TIG was actually aware of the prevalence of restrictive covenants in this staffing industry, because it has been involved in lawsuits arising from these agreements. (*Id.* ¶ 72.) Turkheimer, according to Rezult, is subject to a valid and enforceable Employment Agreement that incorporates a noncompetition agreement, as well as a confidentiality covenant. Rezult affirmatively alleges that TIG either actually knew when it hired Turkheimer that he was bound by an Employment Agreement with Rezult that his employment as a Recruiting Manager for TIG would violate or that TIG "buried its head in the sand to avoid learning the specifics of Turkheimer's restrictive covenants, knowing that his hiring as a Recruiting Manager in Boca Raton would likely violate his Employment Agreement" with Rezult. (*Id.* ¶ 74.) Thus, according to Rezult, TIG intentionally and without legal justification induced Turkheimer to violate the terms of his Employment Agreement by offering him a job as Recruiting Manager in its Boca Raton office. (*Id.* ¶¶ 75–76.) It asserts that TIG's actions were the proximate cause of Turkheimer's breach and that Rezult has been damaged as a result of the

breach. (*Id.* ¶ 77.)

Aside from damages, attorney's fees and costs, the Complaint includes a demand for a temporary and permanent injunction, prohibiting Turkheimer from competing with Rezult in the geographic zone specified by his Employment Agreement and from using or disclosing Rezult's confidential and proprietary information. With its Complaint, Rezult filed a Motion for Temporary Restraining Order, which it later amended to incorporate a request for a preliminary injunction as well. (Doc. Nos. 2, 3, 12, 15.) It has subsequently given notice of the withdrawal of the Motion for Temporary Restraining Order, including its request for a preliminary injunction, on the basis of its having recently learned from TIG that Turkheimer is no longer employed by TIG. Still pending, however, are the defendants' Motions for Partial Dismissal that are the subject of this Memorandum.

## III.     STANDARD OF REVIEW—RULE 12(B)(6)

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider, not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## IV.    DISCUSSION

### A.    Trade Secret Misappropriation Claims

The defendants have both moved for dismissal of the trade secret misappropriation claims, but Turkheimer's brief Memorandum in support of his motion largely incorporates by reference the arguments made by TIG. (*See* Doc. No. 39, at 2–3.) The court, therefore, considers both motions in light of the Memorandum filed by TIG (Doc. No. 41).

###### 1.    Choice of Law

The plaintiff, as set forth above, asserts its trade secret misappropriation claims (Counts C and D) under the DTSA, TUTSA, and FUTSA. TIG argues that Florida law governs both counts. At the same time, however, it acknowledges that Rezult's "claims under DTSA, TUTSA, and FUTSA rise or fall together." (Doc. No. 41, at 4 n.2.) This is because the elements of a DTSA claim are "largely the same" as those under TUTSA and the Uniform Trade Secrets Act more generally. *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, No. 3:19-CV-00966, 2019 WL 5964531, at *5 (M.D. Tenn. Nov. 13, 2019) (Trauger, J.) (citations omitted), *aff'd*, 958 F.3d 532 (6th Cir. 2020). And the DTSA, likewise, "largely mirrors FUTSA." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) (citations omitted). In other words, as TIG itself recognizes, there are no significant differences between the three statutes as they apply to the claims in this case.[1]

While the law is clear that the choice of law rules of Tennessee, as the forum state, would apply to resolve whether Florida's or Tennessee's laws apply to this case, "application of those rules, and indeed the choice of law analysis, are unnecessary if there is no real conflict between or among the relevant laws of the various states." *Gov't Employees Ins. Co. v. Bloodworth*, No. M2003-02986-COAR10CV, 2007 WL 1966022, at *29 (Tenn. Ct. App. June 29, 2007). That is, "a conflict between the laws of the states at issue is a necessary predicate to deciding which state's (or states') laws should govern the various issues presented in the case." *Id.* (citing *Hataway v.*

---

[1] The DTSA does differ from the state laws that are based on the Uniform Trade Secrets Act, insofar as it expressly exempts "reverse engineering, independent derivation, or any other lawful means of acquisition" from the definition of "improper means" of acquiring proprietary information. *Compulife*, 959 F.3d at 1311 n.13 (citing 18 U.S.C. § 1839(6)(b)). Reverse engineering and independent derivation are not at issue in this case, so this distinction is not material.

*McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992)); *accord Lemons v. Cloer*, 206 S.W.3d 60, 64–65 (Tenn. Ct. App. 2006) (before embarking on choice of law analysis, the court must first "determine if there is, in fact, a conflict of laws" (citing *Hataway*, 830 S.W.2d at 55)).

Because there is no apparent conflict between the trade secret misappropriation laws of Florida and Tennessee, or between the state and federal statutory schemes, the court applies the law of the forum state. *Accord Gov't Employees*, 2007 WL 1966022, at *29 ("Where there is only a false conflict, the court may ignore choice of law questions and apply forum law." (citing *Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*, 49 P.3d 803, 806 (Or. Ct. App. 2002)). Of course, precisely because the trade secret misappropriation laws of Florida and Tennessee are so similar, the Florida caselaw cited and relied upon by the defendants may well be relevant and instructive.

### 2. Elements of a Trade Secret Misappropriation Claim

The TUTSA defines a "trade secret" as:

information, without regard to form, including, but not limited to, technical, nontechnical or financial data, a formula, pattern, compilation, program, device, method, technique, process, or plan that:

(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Tenn. Code Ann. § 47-25-1702(4); *see also* Fla. Stat. § 688.002(4). That is, the statute "lists three requirements for information to be considered a trade secret: (1) the information must derive independent economic value from not being generally known, (2) others could obtain economic value from its disclosure or use, and (3) reasonable efforts have been made to maintain its secrecy." *J.T. Shannon Lumber Co., Inc. v. Barrett*, No. 2:07-CV-2847-JPM-CGC, 2010 WL 3069818, at

*4 (W.D. Tenn. Aug. 4, 2010) (citing Tenn. Code Ann. § 47-25-1702(4)).

The Act defines "misappropriation" as:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) Used improper means to acquire knowledge of the trade secret; or

(ii) At the time of disclosure or use, knew or had reason to know that that person's knowledge of the trade secret was:

(a) Derived from or through a person who had utilized improper means to acquire it;

(b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(iii) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

*Id.* § 47-25-1702(2); *see also* Fla. Stat. § 688.002(2).[2]

"TUTSA creates a cause of action for the misappropriation of another's trade secrets." *J.T. Shannon*, 2010 WL 3069818, at *4 (W.D. Tenn. Aug. 4, 2010) (citing *Hamilton-Ryker Grp., LLC v. Keymon*, No. W2008-00936-COA-R3-CV, 2010 WL 323057, at *14 (Tenn. Ct. App. Jan. 28, 2010)). While the statute contains "multiple definitions" of the term "misappropriation," *Hamilton-Ryker Grp.*, 201 WL 323057, at *14, as relevant here, a misappropriation claim requires "[a]cquisition of a trade secret . . . by a person who knows . . . that the trade secret was acquired

---

[2] The term "improper means" is defined as "includ[ing] theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy or limit use, or espionage through electronic or other means." Tenn. Code Ann. § 45-25-1702(1).

by improper means," Tenn. Code Ann. § 47-25-1702(2)(A), or the "disclosure or use of a trade secret while knowing or having reason to know that the trade secret was acquired under a duty to maintain its secrecy or limit its use," *J.T. Shannon Lumber Co.*, 2010 WL 3069818, at *5 (citing Tenn. Code Ann. § 47-25-1702(2)(B)(ii)(b)). *See also Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (to plead a violation of the FUTSA, "a plaintiff must aver that: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it. To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." (citations omitted)).

### 3. *Whether the Complaint States a Trade Secret Claim Against TIG*

TIG argues that the trade secret misappropriation claims asserted against it are subject to dismissal, because the plaintiff does not adequately plead facts that, if true, would establish that TIG misappropriated its trade secrets. (Doc. No. 41, at 5.) Instead, TIG argues, Rezult's Verified Complaint simply "relies on a few conclusory allegations and legal conclusions," premised solely upon "information and belief." (*Id.* (citing Doc. No. 1, Compl. ¶¶ 44, 64, 69).) According to TIG, these amount to no more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that, under *Iqbal*, are not sufficient to state a claim for relief. (*Id.* at 6 (citing *Iqbal*, 556 US. at 678, 681).)

More specifically, TIG argues that Rezult only identifies two actions to support its misappropriation claims: (1) Turkheimer's forwarding to his personal email address a "Top 10 Skill Sets" list; and (2) Turkheimer's deletion of data from his work laptop. TIG contends that neither of these allegations is sufficient to support Rezult's trade secret misappropriation claims,

particularly against TIG. First, it asserts that Rezult does not even allege that the "Top 10 Skill Sets" list is a trade secret and that, even if it had, it has not alleged that TIG acquired, disclosed, or used it. Regarding Turkheimer's alleged deletion of data from his computer, TIG argues that nothing in the Complaint plausibly suggests that the deleted data qualified as trade secrets, that Turkheimer shared any of that data with TIG, or that TIG "otherwise acquired, disclosed, or used the deleted files." (*Id.* at 8.) It further points out that the mere deletion of data, *per se*, even if it belonged to Rezult, does not constitute the "acquisition," "disclosure," or "use" of trade secrets required for a misappropriation claim. (Doc. No. 41, at 8 (citing *LifeLinc Anesthesia, PLLC v. Wolfe*, No. 2:12-cv-02662-JPM-cgc, 2012 WL 13026748, at *2 (W.D. Tenn. Nov. 1, 2012)).)

Rezult argues in response that it has adequately pleaded that Turkheimer "had access to Rezult's trade secrets, left Rezult for a competitor [TIG], and took Rezult's trade secrets with him for [TIG's] benefit." (Doc. No. 43, at 5.) It argues that TIG "knew or should have known that Turkheimer was not permitted to disclose trade secrets" and, further, that it is reasonable to infer from Turkheimer's deletion of documents from his Rezult-issued laptop both that he "took confidential and proprietary documents and information and was covering his tracks" and that Turkheimer "used and disclosed relevant information regarding Rezult's business practices and clients to give [TIG] a competitive advantage." (*Id.* at 6 (quoting Doc. No. 1, Compl. ¶¶ 44, 49).) It contends that "[t]his constitutes misappropriation regardless of whether [TIG] has used the trade secrets it improperly acquired." (*Id.*)

Regarding TIG's assertion that Rezult has not identified which trade secrets TIG misappropriated, Rezult responds that it has adequately alleged that Turkheimer had "access" to its trade secret information "describe[d] with particularity" in paragraphs 20–23 of the Complaint. (Doc. No. 43, at 8.) These paragraphs of the Complaint allege that Turkheimer developed

relationships with Rezult's clients, was introduced to its "key accounts," acted as the "face of the company," and received training on "Rezult's protocols for developing relationships and filling client needs." (Doc. No. 1, Compl. ¶¶ 20–23.) It also asserts that Turkheimer had access to Rezult's "confidential and proprietary information," including "Rezult's implementation plans; Rezult's database of clients, which included access to past Rezult placements, contacts, and market metrics; customers' staffing requirements and margin tolerances; and Rezult's sales, recruiting, pricing, and marketing techniques." (*Id.* ¶ 22.) Rezult further argues that it has adequately alleged that Turkheimer took these trade secrets to which he had access to TIG and disclosed to TIG "relevant information regarding Rezult's business practices and clients to give [TIG] a competitive advantage." (Doc. No. 43, at 8 (citing Doc. No. 1, Compl. ¶ 44).) According to Rezult, these allegations are sufficient to state a claim. (*Id.* (citing *OnSomble, Inc. v. O'Rourke*, No. 3:16-CV-0493, 2016 WL 11653615, at *11 (M.D. Tenn. July 26, 2016)).)

Second, Rezult argues that, insofar as TIG objects to its allegations "upon information and belief," TIG is "adding a requirement to Rule 8 that does not exist," as the federal courts have continued to permit pleading "upon information and belief" even after *Iqbal* and *Twombly* raised the pleading bar. It contends that this type of pleading is necessary and appropriate in this type of case, where the "belief is based on factual information that makes the inference of culpability plausible." (*Id.* at 9 (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), and *Cassidy v. Teaching Co.*, No. 2:13-cv-884, 2014 WL 1599518, at *3 (S.D. Ohio Apr. 21, 2014) (compiling cases of district courts within Sixth Circuit adopting the Second Circuit's standard)).) In Reply, TIG argues that Rezult's response does not address the crux of TIG's argument: that it has failed to plausibly allege facts in support of its claim that its trade secrets have actually been misappropriated. (Doc. No. 45, at 2.)

As an initial matter, it is clear that, even post-*Iqbal* and *Twombly*, facts alleged "upon information and belief" may be sufficient to state a claim for relief. In particular, the "*Twombly* plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged on information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Cassidy*, 2014 WL 1599518, at *3 (quoting *Arista Records*, 604 F.3d at 120). In *Arista* records, however, the plaintiffs' somewhat conclusory allegation that the defendant had engaged in copyright infringement by using "file-sharing networks to download and distribute plaintiffs' music" was supported by the plaintiffs' reference to Exhibit A to the Complaint, which contained "lists of specific songs found in the respective Doe defendants' file-sharing folders, on the date shown, at the time indicated, on the specified online, peer-to-peer, file-sharing network." *Id.* at 121. In other words, the allegations were supported by actual facts. Likewise, in *Cassidy*, also cited by Rezult, the plaintiff alleged facts, and then drew inferences from those facts "upon information and belief":

> Here, the Plaintiff alleges that the Defendant advertises its products at discounts for limited period of times, but that most, if not all, of the Defendant's sales come from the selling of discounted products. From these facts, the Plaintiff infers that the Defendant's "sales" do not actually end and that the "sale" price of the Defendant's products is actually the "regular" price for the products.

Cassidy, 2014 WL 1599518, at *4. The court found this inference reasonable and based on the actual facts alleged. *Id.*

In this case, the plaintiff has adequately alleged that it had trade secrets, that it exercised reasonable care to maintain the confidentiality of the trade secrets, and that Turkheimer had access to its trade secrets. (Doc. No. 1, Compl. ¶¶ 22, 43, 61, 62, 63.) The question raised by TIG's Motion for Partial Dismissal, however, is whether the Complaint contains facts from which it may reasonably be inferred that *TIG* misappropriated any of Rezult's trade secrets. With regard to that

specific question, the Complaint asserts, first: "Upon information and belief, Turkheimer has used and disclosed relevant information regarding Rezult's business practices and clients to give [TIG] a competitive advantage." (Doc. No. 1, Compl. ¶ 44.) This allegation, if it does anything, implicates *Turkheimer*, not TIG. That conclusion is supported by the subsequent paragraph of the Complaint, which asserts that the disclosure itself violated Turkheimer's Employment Agreement and violated the various trade secret acts. (*Id.* ¶ 45.)

The additional facts upon which Paragraph 44 appears to be based are the two actions *by Turkheimer* that are referenced in TIG's motion: (1) Turkheimer's procurement of the "Top 10 Skill Sets" for IT recruiting, which he emailed to his personal email address; and (2) Turkheimer's deletion of the "entire contents of his Rezult laptop," which, Rezult asserts, "create[s] an inference that Turkheimer took confidential and proprietary documents and information and was covering his tracks." (*Id.* ¶¶ 46, 49.) Based on these facts, the plaintiff asserts that "Turkheimer and [TIG] have misappropriated Rezult's trade secrets." (*Id.* ¶¶ 64, 69.)

In other words, Rezult's trade secret claim against TIG rests entirely on a short list of facts: Turkheimer had access to trade secrets; he forwarded a single document to himself before leaving and deleted other information from his laptop; and he went to work for TIG, a direct competitor of Rezult. The court cannot find that these facts, accepted as true and viewed in the light most favorable to the plaintiff, are sufficient to give rise to a plausible inference that TIG—as opposed to Turkheimer—acquired, disclosed, or used trade secrets belonging to Rezult. And the Complaint contains no additional facts supporting such an inference.

The court, therefore, will grant TIG's Motion for Partial Dismissal, insofar as it seeks dismissal of the DTSA, TUTSA, and FUTSA claims against it.

### 4. *Whether the Complaint States a Claim against Turkheimer*

The same conclusion does not necessarily pertain to the misappropriation claims against

Turkheimer himself, however. In that regard, the court, first, rejects the defendants' assertion that the Complaint does not adequately allege that the "Top 10 Skill Sets" list (which has been filed under seal) that Turkheimer forwarded to his personal email address constitutes confidential or proprietary information. Rezult points out that, on its face, the document purports to be a "skill set," and the Employment Agreement signed by Turkheimer documents his recognition that Rezult's "Confidential Information" included, among many other things, "skill sets." (*See* Doc. No. 1, Compl. ¶ 17 (quoting Employment Agreement ¶ 5).) For pleading purposes at least, the fact that the Employment Agreement identifies Rezult's "skill sets" as confidential information, coupled with the undisputed fact that Turkheimer emailed that document to his personal email address just before leaving the company, supports an inference of trade secret misappropriation.

Moreover, while the act of deleting information from the Rezult-issued laptop, *per se*, does not constitute the acquisition, disclosure, or use of trade secrets, for purposes of a misappropriation claim, *accord LifeLinc Anesthesia*, 2012 WL 13026748, at *2, the allegation that Turkheimer deleted data from his laptop does give rise to a reasonable inference that he did so in order to "cover his tracks" and, more specifically, to hide from Rezult what confidential information belonging to Rezult he sent to himself from Rezult's laptop before he left the company. Again, as set forth above, the allegations in the Complaint are sufficient to establish that Rezult had trade secrets and took reasonable efforts to maintain their secrecy and that Turkheimer had substantial access to Rezult's confidential information. It does not take a large leap of the imagination to infer from the fact that he allegedly wiped his computer before going to work for a direct competitor that he first forwarded confidential documents to himself, thus taking confidential information to which he was not entitled. The "misappropriation" in this instance is the form defined by Tenn. Code Ann. § 47-25-1702(2)(A): the "[a]cquisition of a trade secret of another [Rezult] by a person

[Turkheimer] who knows or has reason to know that the trade secret was acquired by improper means." And a claim under TUTSA does not require actual disclosure to another person or entity or the use of it (by either Turkheimer or TIG). Rather, the statute contemplates that "harm to the owner of a trade secret is inherent in its misappropriation." *OnSomble*, , 2016 WL 11653615, at *9 (quoting *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 109 F. Supp. 3d 1009, 1018 (W.D. Tenn. 2015)).

Turkheimer's Motion for Partial Dismissal, seeking the dismissal of the trade secret misappropriation claim against him, therefore, will be denied.

**B.** **Inducement of Breach of Contract**

*1.* *Choice of Law*

TIG again argues that, under Tennessee's choice of law rules, Florida law should govern the plaintiff's tortious interference/inducement of breach of contract claim. As discussed above, before embarking upon a choice of law analysis, the court must first determine whether there is an actual conflict between the relevant laws of the two states. And, with respect to this claim, as TIG points out, there is: under Tennessee law, by statute, a plaintiff proving inducement of breach of contract is automatically entitled to treble damages. *See* Tenn. Code Ann. § 47-50-109 ("[I]n every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract.").[3] The relevant law in Florida is based entirely on common law and does not authorize automatic treble damages. Consequently, there appears to be a material difference between the laws of the two states.

---

[3] The plaintiff fails to acknowledge the availability of treble damages in his Complaint.

The court, therefore, finds that it must undertake a choice of laws analysis. Because Tennessee is the forum state, the court applies Tennessee's choice of law rules. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). With regard to tort claims, Tennessee has adopted the "most significant relationship" approach set forth in the Restatement (Second) of Conflict of Laws for choice-of-law analysis. *Hataway*, 830 S.W.2d at 59. Following this approach, courts in Tennessee apply the "law of the state where the injury occurred . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties." *Id.* at 57 (quoting Restatement (Second) of Conflicts §§ 146, 175).

"[G]enerally the law of the state where the injury occurred will have the most significant relationship to the litigation." *Id.* at 59. Thus, the most significant relationship "provides a 'default' rule whereby trial courts can apply the law of the place where the injury occurred when each state has an almost equal relationship to the litigation." *Id.* Other contacts to be considered in determining which state has the most significant relationship, aside from the place where the injury occurred, include the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Id.* (quoting Restatement (Second) of Conflicts § 145).

Weighing these factors here persuades the court that it should apply Tennessee law. First, and most importantly, the injury caused by the alleged tortious interference with contract occurred in Tennessee. *See Avery Dennison Corp. v. Juhasz*, 924 F. Supp. 2d 893, 898–99 (N.D. Ohio 2013) (applying the Restatement's choice of law analysis and finding the place of injury on tort claims, including trade secret misappropriation and tortious interference with contract, to be the plaintiff's principal place of business). While the alleged conduct causing the injury to Rezult took place in

Florida, as that was where Turkheimer worked for Rezult and was purportedly induced to breach his Employment Agreement by going to work for TIG in its office in Boca Raton, Florida, this is the only factor that weighs in favor of applying Florida law. As for the third factor, although Turkheimer is a resident of Florida, he is not a defendant with respect to the tortious interference claim. Rezult, of course, is domiciled in Tennessee, while TIG is a limited liability company registered to do business in Tennessee and whose two members are, respectively, residents of Virginia and Georgia. Both companies do business in many states, including both Florida and Tennessee. This factor, if it has any relevance to the analysis, weighs slightly in favor of applying Tennessee law. And fourth, the "relationship, if any, between the parties," *Hataway*, 830 S.W.2d at 59, yields inconclusive results, because TIG and Rezult do not actually have a relationship, except through Turkheimer. In sum, the court finds that Tennessee and Florida have "an almost equal relationship to the litigation," *id.*, which means, under *Hataway*'s default rule, that the court "can apply the law of the place where the injury occurred," *id.* The court, therefore, will apply Tennessee law to this claim.

## 2. Elements of Tortious Interference Claim

"In Tennessee, the common law action for tortious interference with contract and the statutory action for unlawful procurement of breach of contract have the same elements and operate as alternative theories of recovery." *Hauck Mfg. Co. v. Astec Indus., Inc.*, 376 F. Supp. 2d 808, 832 (E.D. Tenn. 2005) (citing Tenn. Code Ann. § 47-50-109; *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999)). In order to recover on either cause of action, a plaintiff is required to establish: (1) the existence of a contract between the plaintiff and a third party; (2) the defendant's knowledge of that agreement; (3) the defendant's intent to cause or bring about a breach of the agreement; (4) the defendant acted with malice; (5) the agreement was in fact breached; (6) the defendant's conduct was the proximate cause of the

breach or termination; and (7) the plaintiff suffered damages resulting from the breach or termination. *Id.*

The third element, intent, requires only "'the intent to cause the result,' *i.e.*, the breach." *AmeriGas Propane, Inc. v. Crook*, 844 F. Supp. 379, 389 (M.D. Tenn. 1993) (quoting Restatement (Second) of Torts § 766 cmt. h (1979)). Thus, even if the defendant does not "act for the purpose of interfering with the contract," it may harbor the "requisite intent" where it "should have known that the interference with the contract was certain or substantially certain to occur as a result of [its] conduct." *Id.* (citing Restatement (Second) of Torts § 766 cmt. j)); *see also Clippinger v. Audatex N. Am., Inc.*, No. 2:20-cv-02501-TLP-atc, 2021 WL 1823117, at *3 (W.D. Tenn. May 6, 2021) ("To show intent to induce another to breach a contract, a plaintiff must show that the wrongdoer either desired his act to cause a breach or was substantially certain that his actions would result in one." (quotation marks and citations omitted)). Malice, for purposes of the fourth element, "does not require ill will or spite toward Plaintiff. Malice is demonstrated simply by conduct that is the willful violation of a known right." *Id.* (citation omitted). "This means that Plaintiff must allege that Defendant's actions were intentional and without legal justification, or in other words, that Defendant acted for the indirect purpose of injuring the plaintiff or benefiting the defendant at the plaintiff's expense." *Clippinger*, 2021 WL 1823117, at *3 (quotation marks and citations omitted). "Knowledge of a contract alone is not enough to show intent or malice." *Id.*

"A complaint for tortious interference with contract must do more than simply parrot the legal elements of the cause of action." *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005). In other words, "a complaint alleging tortious interference with the performance of a contract must also allege

specific facts that, if true, would support each of the seven elements of the tort." *Id.*

### 3. *Whether the Complaint States a Claim Against TIG*

TIG argues that the Complaint fails to state a claim against it for inducement of breach of contract, because it fails to allege facts showing that (1) TIG knew about the contract with restrictive covenants in effect between Turkheimer and Rezult; (2) TIG intended to interfere with Rezult's contractual rights; or (3) acted with malice. (Doc. No. 41, at 10–11.)

Regarding the knowledge element, the plaintiff argues that the Complaint alleges sufficient facts from which it may plausibly be inferred that TIG knew that Turkheimer was subject to restrictive covenants. The court agrees. Although the Complaint alleges somewhat conclusorily that TIG "knew or should have known" about the existence of a binding contract between Turkheimer and Rezult, it also alleges that the recruiting industry, particularly in the specialized fields in which both Rezult and TIG focus, is highly competitive; that restrictive covenants are the "industry standard for employees like Turkheimer," such that a recruiting company hiring laterally could be expected to inquire about whether a prospective hire is bound by restrictive covenants; and that TIG is well aware of the prevalence of such restrictive covenants, having been involved in lawsuits arising from such agreements. (Doc. No. 1, Compl. ¶¶ 10, 30, 71, 72, 74.) The court finds that these allegations are sufficient to give rise to a plausible inference that TIG either actually knew about Turkheimer's Employment Agreement or willfully failed to ask about it. At the pleading stage, this is sufficient.[4] *Accord AmeriGas Propane*, 844 F. Supp. at 389 (finding "[i]n

---

[4] The court reaches that conclusion even without consideration of Turkheimer's Declaration, filed in support of his Response to Rezult's now-withdrawn Motion for Temporary Restraining Order, in which he states that he and TIG structured his role at TIG in such a way as to "ensure that [his] employment with TIG could in no way place Rezult at any competitive disadvantage. (Doc. No. 14-1, Turkheimer Decl. ¶ 6.) This Declaration further strongly implies that TIG was aware that Turkheimer was subject to an Employment Agreement containing restrictive covenants.

light of the prevalence of non-compete agreements" in the relevant industry, that the defendants' agents were on notice and "should have inquired whether" the employees they hired away from the plaintiff had executed restrictive covenants with the plaintiff).

As for intent and malice, TIG argues that the Complaint's entirely conclusory assertions parrot the elements of the claim and are insufficient to establish the requisite intent or state of mind. As relevant to this claim, the Complaint contains the following allegations:

> [TIG] caused Turkheimer to violate his Employment Agreement by hiring him as Recruiting Manager in [TIG's] Boca Raton office[.]

> By offering him a job as Recruiting Manager in its Boca Raton office, [TIG] induced Turkheimer to violate the terms of his Employment Agreement.

> In so doing, Intersect acted intentionally and without legal justification to cause Turkheimer to breach his Employment Agreement.

(Doc. No. 1, Compl. ¶¶ 73, 75, 76.)

These allegations, however, must be considered in light of the averments that (1) Turkheimer was hired to open TIG's new Boca Raton's office; and (2) Turkheimer gave notice to Rezult on May 31, 2022 that he was leaving the company and, at the time he gave notice, also advised Rezult that he was joining TIG. The allegation that Turkheimer was hired to open TIG's new office in Boca Raton gives rise to a plausible inference that Turkheimer was not likely to have known about the position unless TIG or a headhunter came looking for him. Moreover, the fact that he told Rezult on the day he gave notice that he was going to work for TIG strongly implies that he was in talks with TIG about the move well before he left Rezult.

In light of these inferences, Rezult argues that, under Rule 9, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally" Fed. R. Civ. P. 9(b), and that "improper intent may be established if the defendant's conduct was 'intentional and without legal justification." (Doc. No. 43, at 14 (quoting *HCTec Partners, LLC v. Crawford*, No. M2020-01373-

COA-R3-CV, 2022 WL 554288, at *16 (Tenn. Ct. App. Feb. 24, 2022)).) Rezult argues that such intent, as well as willful violation of Rezult's known rights, may be inferred simply from the fact that TIG "hired Turkheimer from a known competitor" effectively across the street from Rezult's Boca Raton office. (*Id.* at 15.)

Although Federal Rule of Civil Procedure 9(b) permits a party to allege "generally" "[m]alice, intent, . . . and other conditions of a person's mind," "factual allegations corroborating Defendant's malicious intent are still necessary." *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 760 (M.D. Tenn. 2019) (Crenshaw, C.J.). As the Supreme Court recognized in *Iqbal*, the term "generally" as used in Rule 9(b) "is a relative term" to "compared to the particularity requirement applicable to fraud or mistake." *Iqbal*, 556 U.S. at 686. Thus, Rule 9 must be understood as simply "excus[ing] a party from pleading . . . intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8." *Id.* at 686–87.

Accordingly, "to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred." *Vanderbilt Univ.*, 382 F. Supp. 3d at 760 (quoting *Mourad v. Marathon Petroleum Co.*, 129 F. Supp. 3d 517, 526 (E.D. Mich. 2015)). And, as set forth above, in the context of an inducement of breach of contract claim, "knowledge alone by defendant is [not] sufficient to show intent and malice." *Keith v. Aerus, LLC*, No. 2:09-CV-297, 2010 WL 3883434, at *5 (E.D. Tenn. Sept. 29, 2010), *quoted in Vanderbilt Univ.*., 382 F. Supp. 3d at 760. Knowledge may be "relevant to the question of intent, but simple knowledge of the contract cannot be automatically equated with intent to induce a breach. What plaintiff must allege is plausible facts to show an intent to induce a breach." *Id.*

This case presents a very close call, as the Complaint contains very few actual facts pertaining to TIG's conduct, as opposed to Turkheimer's conduct. However, viewed in the light most favorable to the plaintiff, the facts as alleged in the Complaint plausibly support an inference that TIG knew that Turkheimer was employed by Rezult and was bound by restrictive covenants with Rezult and that TIG nonetheless approached Turkheimer to induce him to leave Rezult and open a competing office in the same town, with actual knowledge that doing so would cause him to breach his agreement with Rezult. The court finds that the Complaint in this case just barely states facts sufficient to establish the "facial plausibility" required to "unlock the doors of discovery" and from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678–79. *Accord AmeriGas Propane*, 844 F. Supp. at 389 (noting that a defendant may harbor the "requisite intent" where it "should have known that the interference with the contract was certain or substantially certain to occur as a result of [its] conduct" (citing Restatement (Second) of Torts § 766 cmt. j)).

The motion for dismissal of this claim will be denied.

## V.     CONCLUSION

For the reasons set forth herein, the court will deny Turkheimer's motion (Doc. No. 38) seeking dismissal of the trade secret misappropriation claims against him. The court will grant that portion of TIG's motion (Doc. No. 40) seeking dismissal of the trade secret claims against it but deny that part of the motion seeking dismissal of the inducement of breach of contract claim.

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge